UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FARRINGTON,<br><br>           Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>           Defendant. | No.  CV 04-4019-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On June 4, 2004, David Farrington ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for disability insurance benefits. On July 2, 2004, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on December 28, 2004, defendant filed an Answer to Complaint. On April 12, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On June 27, 2001, plaintiff filed an application for supplemental security income benefits. (Administrative Record ["AR"] at 40-43). Plaintiff alleged that, beginning on October 1, 1996, he was unable to work because of a heart problem, shortness of breath, and fatigue. (AR at 27, 32). The Commissioner denied plaintiff's application for benefits, both initially and upon review. (AR at 27-30, 32-35).

Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 36). On September 26, 2002, the ALJ conducted a hearing in Lancaster, California. (AR at 177-196). Plaintiff appeared at the hearing with his counsel and testified. (AR at 177-193). Ruth Arnush, a vocational expert, also testified. (AR at 193-196).

On January 13, 2003, the ALJ issued his decision denying benefits. (AR at 13-18). In his decision, the ALJ concluded that plaintiff suffered from the following severe impairments: hypertension and asthma. (AR at 17). According to the ALJ, however, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 14, 17). The ALJ also found that plaintiff's complaints of totally disabling limitations were not fully credible. (AR at 18). The ALJ concluded that plaintiff retained the residual functional capacity to perform a significant range of medium work. (Id.). Ultimately, the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

Plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 8). On April 6, 2004, the Appeals Council affirmed the ALJ's decision. (AR at 3-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ erred in assessing plaintiff's residual functional capacity.

2. The ALJ improperly rejected plaintiff's credibility.

3. The ALJ erred in relying on the vocational expert's opinion because the vocational expert premised his opinion on an incomplete hypothetical.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.     The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. Id. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities. Id. at 140-41. Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. Id. at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Id. If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. Bowen, 482 U.S. at 141. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. Id. at 142. The claimant is entitled to disability benefits only if he is not able to perform such work. Id.

**B.     Plaintiff's Credibility**

Plaintiff objects to the ALJ's determination that plaintiff lacked credibility. Whenever an ALJ's disbelief of a claimant's

4

testimony is a critical factor in a decision to deny benefits, as it is here, the ALJ must make explicit credibility findings, supported by "specific, cogent reasons for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). An ALJ's reasons for discrediting a claimant's testimony must be sufficiently specific for the reviewing court to assess whether the decision was impermissibly arbitrary. Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991).

At the hearing, plaintiff testified that he had a heart condition, that his ankles swelled up, and he had shortness of breath. (AR at 184). Plaintiff said he was tired all the time, did not sleep a lot, and he would "fall in and out of sleep a lot." (Id.) The ALJ rejected plaintiff's subjective complaints for three reasons: 1) plaintiff's complaints were out of proportion with the objective clinical findings, 2) plaintiff's conservative treatment conflicted with the seriousness of his complaints, and 3) plaintiff did not cooperate with his physicians' treatment recommendations. As discussed below, the ALJ's reasons for rejecting plaintiff's credibility were not clear and convincing.

**1. Absence of Objective Findings to Substantiate Plaintiff's Claims**

The ALJ cited to a lack of objective medical evidence in his decision to reject plaintiff's credibility regarding his subjective complaints. An ALJ cannot rely on an absence of disability findings to reject a plaintiff's credibility. A claimant need not produce evidence of pain other than his own subjective testimony. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof."). Nor must a claimant present objective

medical evidence of a causal relationship between the impairment and the type of symptom. See Smolen, 80 F.3d at 1282; see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain."). Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell, 947 F.2d at 344 (internal quotations omitted). This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," Smolen, 80 F.3d at 1282, such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." Id. (internal quotations omitted).

Put another way, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." Social Security Ruling ("SSR") 96-7p.[1] Instead, a claimant must demonstrate only two things: "(1) [he] must produce objective medical evidence of an impairment or impairments; and (2) [he] must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some

---

[1] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are, nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

6

degree of symptom." SSR 96-7p; see also SSR 96-3p.

In this case, the ALJ found that plaintiff's subjective complaints and limitations were out of proportion with the objective findings in the record. (AR at 16). Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Lester, 81 F.3d at 834. Here, the ALJ explicitly determined that plaintiff's hypertension and asthma constituted severe impairments. (AR at 17). Thus, unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Id. General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir. 1988).

Here, the ALJ found that although plaintiff testified to disabling symptoms secondary to congestive heart failure, the progress notes showed that the claimant's heart condition was stable on medications and the imaging studies showed no significant cardiac abnormality. (AR at 16). But Sohail Afra, M.D., a consultative examiner, who examined plaintiff on October 16, 2001, noted that while an echocardiogram conducted in April 2000, reported normal results (AR at 143), the normal echocardiogram may be secondary to the fact that the patient had been treated for hypertension with medication. (AR at 75). At the time Dr. Afra examined him, plaintiff was complaining of

7

dyspnea on exertion.[2] (AR at 75). In her report, Dr. Afra stated that a current echocardiogram needed to be performed, and that at times dilated cardiomyopathy was not necessarily reflected on a physical examination. (Id.). Furthermore, plaintiff had been consistently taking medications to treat both his hypertension and congestive heart problems. For example, plaintiff was taking furosemide, which is used to treat hypertension, helps plaintiff's heart beat stronger, and improves swelling and shortness of breath problems.[3] Plaintiff was also taking digoxin, amlodipine, lisinopril, and carvedilol, which were also used to treat hypertension and congestive heart problems. (AR at 50, 64, 65, 67, 73, 121, 163). Thus, to the extent the ALJ rejected plaintiff's statements that he was always tired, had shortness of breath problems, and had a heart condition, the objective findings in the record were not clearly inconsistent with plaintiff's complaints.

**2.   Conservative Treatment**

The ALJ also cites to plaintiff's conservative medical treatment as a basis to reject plaintiff's subjective complaints regarding his disabled status. (AR at 16). Specifically, the ALJ notes that plaintiff's subjective complaints and alleged limitations were not consistent with his treatment in that plaintiff had not been hospitalized and had not received emergency room care. (Id.). As discussed below, this claim fails.

---

[2] "Dyspnea" is defined as "shortness of breath, a subjective difficult or distress in breathing, usually associated with disease of the heart or lungs." Stedman's Medical Dictionary 556 (27th ed. 2000).

[3] See http://my.webmd.com/webmd_today/home/default.htm.

8

An ALJ may rely on a plaintiff's conservative treatment regimen to reject a plaintiff's testimony of disabling limitations or disabling pain. Fair v. Bowen, 885 F.2d at 604. For example, in Fair v. Bowen, the Ninth Circuit affirmed an ALJ's credibility decision where the ALJ stated, among other things, that the claimant received only minimal conservative treatment for his various complaints. Id. But the Court also noted that a plaintiff could overcome an ALJ's credibility decision by offering a credible explanation about the lack of more serious treatment. See id. ("While such reasoning may not hold up in all cases (there may be claimants with good reasons for not seeking treatment and credible explanations for their ability to work inside but not outside the home), it is sufficient here, as Fair has not put forward any evidence that reconciles the inconsistency between his words and his actions."); see also Smolen, 80 F.3d at 1284 (evidence of good reason existed where claimant had no insurance and could not afford treatment); see also 20 C.F.R. § 404.1530 (listing acceptable reasons for failure to follow prescribed treatment).

Here, the ALJ's reference to plaintiff's conservative treatment fails for two reasons. First, the record shows that plaintiff received a variety of medications in order to stabilize his physical impairments. At the time of his examination by Dr. Afra in October 2001, plaintiff had been taking no less than five medications at one time to control his condition. (AR at 72-77). Plaintiff's treatment records indicate that he was taking albuterol in order to control his asthma. (AR at 67). And, as discussed above, plaintiff was taking numerous medications for both his heart condition and hypertension. (AR at 50, 65, 67, 73, 121, 127, 137, 163). Plaintiff, moreover,

1 sought treatment on a routine basis, notwithstanding his homeless
2 condition, lack of money, and reliance on friends for transportation.
3 (AR at 41, 138, 141, 179-80). Furthermore, the record suggests that
4 plaintiff could not afford to seek more treatment. Although the
5 courts have held that "an unexplained, or inadequately explained,
6 failure to seek treatment . . . can cast doubt on the sincerity of [a]
7 claimant's pain testimony," Regenniter v. Commissioner of the Social
8 Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (citing
9 Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)), courts have also
10 proscribed the rejection of a claimant's complaints for lack of
11 treatment when the record establishes that the claimant could not
12 afford it. Id. (Citing Smolen v. Chater, 80 F.3d 1273, 1284 (9th
13 Cir. 1996).

14 Second, the ALJ also stated that there was no evidence that
15 plaintiff had been hospitalized or received emergency care for his
16 asthma or hypertension. But in his Disability Report, plaintiff
17 reported that he was hospitalized at Harbor UCLA Medical Center for
18 two to three weeks in October 1996. (AR at 48). Plaintiff was
19 admitted for treatment to the Antelope Valley Rehabilitation Center on
20 December 27, 2001. (AR at 121). Finally, medical records indicate
21 that plaintiff received urgent care treatment in May 1999. (AR at
22 154). Thus, the record reflects that plaintiff did, in fact, require
23 hospitalization and emergency care.

24     **3.   Failure to Follow Treatment Advice**

25 The ALJ cites plaintiff's failure to comply with treatment
26 recommendations suggest that he does not suffer the alleged symptoms
27 that he claims of. Specifically, the ALJ cites plaintiff's failure to
28 ///

1 stop smoking, stop using cocaine, and comply with a low sodium diet.
2 (AR at 16).
3    An ALJ may cite a claimant's failure to follow a doctor's
4 recommendation to stop smoking and stop using cocaine and to comply
5 with a low sodium diet as a legitimate reason to discredit the
6 claimant's testimony. See Fair v. Bowen, 885 F.2d at 603 (listing
7 proper reasons to discredit claimant's testimony and stating, "Another
8 such form of evidence is an unexplained, or inadequately explained,
9 failure to seek treatment or follow a prescribed course of
10 treatment"); see also Smolen, 80 F.3d at 1284 (ALJ may rely on
11 claimant's "unexplained or inadequately explained failure to seek
12 treatment or to follow a prescribed course of treatment"). But, in
13 order to do so, the ALJ must first inquire whether plaintiff would
14 have been able to return to work if plaintiff had followed the
15 prescribed treatment. See Burnside v. Apfel, 223 F.3d 840, 843-44
16 (8th Cir. 2000) (finding that ALJ erred in citing claimant's failure
17 to stop smoking without first conducting inquiry about whether
18 quitting would have restored claimant's "ability to work or [would
19 have] sufficiently improve[d] his condition"); see also Shramek v.
20 Apfel, 226 F.3d 809, 812-13 (7th Cir. 2000) (en banc) (describing
21 ALJ's citation to claimant's failure to quit smoking without first
22 inquiring whether quitting would have restored claimant's ability to
23 work as "a misuse of the non-compliance regulation") (citing 20 C.F.R.
24 404.1530(a)).
25    Here, the ALJ erred in citing plaintiff's failure to stop smoking
26 and stop using cocaine because no evidence in the record shows that to
27 do so would have restored plaintiff's ability to work. The ALJ merely
28

11

presumed that plaintiff would have been able to overcome his disabilities if he had followed the recommendations of his physicians.

As for his failure to comply with a low sodium diet, plaintiff testified that he was homeless and relied on free meals. (AR at 185-86). Plaintiff testified that while he cannot control the sodium content in the free meals that the mission serves him, he does not add additional salt to his meal. (Id.). The ALJ noted that plaintiff received general relief of $215 per month, as well as food stamps. (AR at 15). Although the ALJ appears to suggest that plaintiff could use the money and food stamps to take control of the amount of sodium in his diet, such argument is unpersuasive. It is unrealistic for the ALJ to suggest that the relatively small amount of money that plaintiff received could have been used to prepare low sodium meals when plaintiff received free meals and could use the money to pay for shelter, clothing, and other personal needs. Overall, the ALJ provided insufficient reasons for rejecting plaintiff's credibility.

**C.    Remand is Required to Remedy the Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy the defects in the ALJ's decision, and where the record should be developed more fully. McAlister, 888 F.2d at 603; Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see

12

Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen, 80 F.3d at 1292.

Here, the Court finds remand appropriate. The reasons cited by the ALJ in support of his rejection of plaintiff's credibility are insufficient. On remand, the ALJ must provide specific and cogent reasons in support of his finding that plaintiff's allegations regarding his limitations are not fully credible.[4]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: August 24, 2005

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[4] In the Joint Stipulation, plaintiff also contends that the ALJ erred in assessing plaintiff's residual functional capacity and in relying on the vocational expert's opinion. As explained above, however, the ALJ's errors in rejecting plaintiff's credibility constitute sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.